Strafford
No. 98-061

# THE STATE OF NEW HAMPSHIRE

v.

# ARTHUR DIXON

November 2, 1999

*Philip T. McLaughlin*, attorney general (*John P. Kacavas*, senior assistant attorney general, on the brief, and *N. William Delker*, assistant attorney general, orally), for the State.

*Howard Gross*, of Dover, by brief and orally, for the defendant.

HORTON, J. The defendant, Arthur Dixon, appeals his conviction in Superior Court (*Fauver*, J.) for one count of aggravated felonious sexual assault without penetration. *See* RSA 632-A:2, II (1996). We affirm.

Between January 1993 and August 1996, the victim regularly visited her grandmother, who lived with the defendant. She spent one night every other weekend in Farmington at her grandmother's residence, which changed location three times during this period. In July 1996, the victim disclosed to her parents separately that the defendant had improperly "touched her." The victim's father reported the allegations to the local police department.

A grand jury subsequently indicted the defendant on three charges of aggravated felonious sexual assault. After a jury trial in

November 1997, the defendant was acquitted of two charges but convicted of the third.

On appeal, the defendant argues that the trial court erred by: (1) denying his motion for a bill of particulars; (2) refusing to find the victim incompetent to testify; (3) denying his motion to exclude evidence of bad acts; (4) refusing to allow him to cross-examine a State witness regarding statements made by the defendant; and (5) giving an erroneous supplemental jury instruction.

## I. Bill of Particulars

The defendant was indicted for three sexual assaults occurring between January 1, 1993, and August 1, 1996. The three indictments were identical except that each charged the defendant with committing sexual assault at a different address. Prior to trial, the defendant moved for a bill of particulars specifying the date and location of each act charged in the indictments. The Trial Court (*Mohl*, J.) initially denied the motion, but at the close of trial, the Trial Court (*Fauver*, J.) granted the defendant's request to require the State to prove beyond a reasonable doubt the location of each assault. The defendant now argues that the trial court's refusal to compel the State to specify the dates of the assaults left him unable to prepare an adequate defense and violated his federal and State double jeopardy and confrontation rights.

"The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense and to enable him to prepare an intelligent defense. A bill of particulars strictly limits the prosecution to proof within the area of the bill." *State v. Allison*, 134 N.H. 550, 554, 595 A.2d 1089, 1091 (1991) (quotations, emphasis, citation, and brackets omitted). The decision whether to grant a motion for a bill of particulars is committed to the trial court's sound discretion. *State v. Voorhees*, 137 N.H. 650, 652, 632 A.2d 825, 826 (1993). We will not reverse the decision below unless the defendant shows that it was "clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

"The exact date of the assault is not an element of the aggravated felonious sexual assault crime." *State v. Demond*, 136 N.H. 233, 234, 614 A.2d 1342, 1342-43 (1992) (quotation omitted). Where a defense based on the victim's age or statute of limitations is not possible, "a defendant generally has no basis for complaining that the indictment fails to allege a precise date, absent a showing that the

inexactness raises a possibility of prejudice specific to him." *Id.* at 234, 614 A.2d at 1343 (quotation omitted).

█ The defendant does not allege that he had a defense based on the victim's age or statute of limitations. The question is whether the lack of specific dates raised the possibility of prejudice specific to him. The defendant asserts that the forty-four month period alleged in the indictments prejudiced his ability to prepare a defense based on lack of opportunity. He argues that because he "had no opportunity or access to the locations alleged in the indictments other than those times when he lived in those locations," a knowledge of the specific dates was necessary to insure that he would not be convicted for an act committed at a location when he did not reside there.

The State contends that because it did not know the specific dates of the assaults, it should not be required to arbitrarily select exact dates in order to furnish the defendant with an alibi defense. We agree.

Although forty-four months is a lengthy period of time in which to allege a single act of assault, *see, e.g., id.* at 234, 614 A.2d at 1342 (alleging ten-month period), we cannot say that it is excessively long as a matter of law, *see State v. Gibson*, 973 S.W.2d 231, 241 (Tenn. Crim. App. 1997) (alleging four-year period). We determine on a case-by-case basis whether the defendant was entitled to a bill of particulars.

Here, the defendant does not deny that he had access to the victim at the locations alleged during the time period alleged. At trial, he challenged the victim's credibility and denied that the assaults occurred. That the defendant did not have access to the victim at one location while residing at another does not constitute a time-based defense requiring specification of dates, *cf. Woertman v. People*, 804 P.2d 188, 191 (Colo. 1991), because the State was required to prove only that the defendant assaulted the victim once at each location before the indictments were returned and within the statute of limitations, *see State v. Seymour*, 142 N.H. 620, 622, 707 A.2d 130, 132 (1998). Under these circumstances, we cannot see how the lack of specific dates prejudiced the defense because they were not an essential element of the crimes charged. *Cf. id.*

The defendant argues that under *State v. Boire*, 124 N.H. 622, 474 A.2d 568 (1984), he was entitled to information of the exact date of each offense so long as there was a possibility of asserting a time-based defense. We disagree. We do not require the State to fix precise dates for aggravated felonious sexual assault, in part

because the statute does not mandate it, and in part because victims typically have difficulty, especially if they are young children, in recalling specific dates of offenses that may have occurred over a long duration. *See State v. Williams*, 137 N.H. 343, 346, 629 A.2d 83, 85 (1993). The defendant's argument would require the State to provide the exact time of the assault whenever a defendant alleges the possibility of a time-based defense. We refuse to read *Boire* so broadly. *Boire* states that the State may be required to furnish a bill of particulars if the defendant can show it necessary for the preparation of a defense. *Boire*, 124 N.H. at 624, 474 A.2d at 569. A bare, conclusory assertion alone of the possibility of a time-based defense is insufficient to invoke the right to a bill of particulars. *Cf. State v. Chick*, 141 N.H. 503, 507, 688 A.2d 553, 556 (1996).

For this reason, we also reject the defendant's contention that *Williams* requires the State to provide exact dates. We initially point out that *Williams* does not address the requirements for a bill of particulars. Rather, *Williams* recognized a second exception, in addition to a bill of particulars, to the general rule that time of assault is not an element in aggravated felonious sexual assault. *See Seymour*, 142 N.H. at 622-23, 707 A.2d at 132. "[I]f the State alleges the crime occurred within a time frame in the indictment or complaint and the defendant asserts a lack of opportunity defense for the entire period, then the State must establish the time frame as part of its proof." *Id.* at 623, 707 A.2d at 132. *Williams* protects a defendant accused of sexual assault from conviction based on evidence of his access to the victim outside of the time period alleged in the indictment. *See Williams*, 137 N.H. at 348, 629 A.2d at 86. A defendant must actually assert a time-based defense that he was unavailable for the entire period charged in the indictment to be entitled to a *Williams* instruction. *See id.* at 347, 629 A.2d at 85-86. Here, the evidence did not expose him to a conviction based on evidence of access to the victim before or after the alleged time-frame. Moreover, the defendant conceded that he did not assert a time-based defense. *Williams* therefore does not apply.

The defendant argues, however, that he might have presented an alibi defense if he had known the specific dates of the assaults prior to trial and that the requirement of location imposed by the court at the end of trial was too late to aid his defense. While it might be more convenient for a defendant to acquire such information before trial, a problem arises when the State does not have that information. In this situation, "the trial court cannot determine whether or not the defendant has been hampered in his defense until the court knows what proof the state will offer as to the time and place of the

offense, and how this evidence relates to the actual theory of defense." *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991). Generally, this means information will not be apparent until the case is tried. *Id.* Hence, we conclude that the trial court did not err in making its ruling after the evidence had been submitted.

■ We further reject the defendant's contention that the denial of a bill of particulars violated the right to confront his accuser under Part I, Article 15 of the State Constitution and the Sixth Amendment of the Federal Constitution because it limited his strategic ability to cross-examine the victim. As the federal confrontation clause affords no greater protection than the State confrontation clause, see *State v. Roberts*, 136 N.H. 731, 744, 622 A.2d 1225, 1235 (1993), we consider his claim under the State Constitution first, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 351 (1983), and refer to federal law only if it aids in our analysis, *see State v. Jaroma*, 139 N.H. 611, 613, 660 A.2d 1131, 1132 (1995).

■ The opportunity to impeach a witness's credibility through cross-examination is guaranteed under this State's confrontation clause. *See Roberts*, 136 N.H. at 744, 622 A.2d at 1234. The lack of a bill of particulars did not, however, preclude the defendant from questioning the victim about his access to her or dates of the assaults. The defendant had an opportunity to cross-examine the State's witnesses. *Cf. State v. Rodriguez*, 136 N.H. 505, 508-09, 618 A.2d 810, 812-13 (1992). Indeed, his counsel stated at trial that the defense had chosen to exercise its right of confrontation rather than avoid cross-examining the victim. That he chose to elicit the victim's inconsistent statements, including testimony that he had touched her over numerous occasions, was a matter of trial strategy, and does not curtail his right to confront witnesses.

■ The defendant also argues that the absence of a bill of particulars specifying exact dates places him in jeopardy of being prosecuted for the same crime twice. We analyze the question first under the State Constitution, *see Ball*, 124 N.H. at 231, 471 A.2d at 350, citing federal law only to aid our analysis, *see Jaroma*, 139 N.H. at 613, 660 A.2d at 1132. Because the State Constitution provides as much protection as the Federal Constitution in this area, we need not undertake a separate federal analysis. *See State v. Haines*, 142 N.H. 692, 696, 709 A.2d 762, 764 (1998).

In an indictment for aggravated felonious sexual assault, "the breadth of the period alleged [does not] provide grounds to fear the possibility of double jeopardy." *State v. Lakin*, 128 N.H. 639, 640,

517 A.2d 846, 847 (1986). The State is barred from prosecuting the defendant for the same type of act during any part of the entire period alleged in the earlier indictments. *See id.* Hence, by alleging a broader time period, the State actually affords the defendant greater double jeopardy protection than by alleging a narrower time period.

## II. Competency of Witness

During trial, after the victim's testimony, the defendant moved to dismiss the charges, arguing that the victim demonstrated such inability to understand the difference between truth and falsehood that she was an incompetent witness. The trial court denied the motion and refused to find the witness incompetent, concluding that the quality of her testimony was "something the jury can consider." The defendant argues that the trial court erred in failing to find the victim, the State's key witness, incompetent to testify.

■ A witness is generally presumed competent to testify, *see* N.H. R. EV. 601(a), unless "the court finds that the witness lacks sufficient capacity to observe, remember and narrate as well as understand the duty to tell the truth," N.H. R. EV. 601(b). Whether a witness is competent is a question to be determined by the trial court. *State v. Aikens*, 135 N.H. 569, 571, 607 A.2d 948, 949 (1992). "Where the record supports the [trial] court's determination of competency, we will not disturb that determination absent an abuse of discretion." *Id.* (quotation omitted).

■ The defendant characterizes the victim's testimony as "riddled with conflict and inconsistencies" and argues that it exhibits "her inability to understand basic concepts," such as street addresses. The victim was eleven years old at the time of trial, and both parties as well as the trial court agreed that she was easily led in her testimony. A child's inconsistent testimony, lack of knowledge, or inability to grasp certain skills are material to the issue of competency but do not mandate a finding that the child is incapable of observing, remembering, narrating, or telling the truth. *See State v. Briere*, 138 N.H. 617, 620, 644 A.2d 551, 554 (1994). After a finding of competency, they are questions of credibility for the fact finder, who has responsibility to assess the value of the testimony. *See id.* at 620-21, 644 A.2d at 554. The record shows that the victim understood the questions asked of her and articulated answers, many of which reflected her personal observations. The trial court was clearly aware that the victim's level of comprehension was

limited, commensurate with the ability of eleven-year-old children. *Cf. id.* at 621, 644 A.2d at 554. Finding no abuse of discretion, we defer to the trial court's determination that she was competent, particularly since it was made with the benefit of first-hand observation. *Cf. State v. Mills*, 136 N.H. 46, 50, 611 A.2d 1104, 1105-06 (1992).

## III. Admission of Evidence

The defendant contends that because he was charged with sexual assault without penetration, the trial court erred under New Hampshire Rules of Evidence 403 and 404(b) by allowing evidence that the defendant penetrated the victim and that such penetration "hurt."

We will not disturb the trial court's evidentiary rulings absent an abuse of discretion. *State v. Crosby*, 142 N.H. 134, 137, 697 A.2d 1377, 1379 (1997). Rule 404(b) provides in part:

> Evidence of other crimes, wrongs, or acts is not admissible
> to prove the character of a person in order to show that the
> person acted in conformity therewith.

The State argues, and the trial court found, that Rule 404(b) is inapplicable because the penetration constituted a material part of the element of touching the victim's genitalia charged to the defendant. We agree.

Under our statute, it is possible to touch genitalia without penetration, but it is normally not possible to penetrate genitalia without touching them. *Compare* RSA 632-A:2, I (1996 & Supp. 1998) *with* RSA 632-A:2, II; *cf. State v. Schmidt*, 562 N.W.2d 859, 876 (Neb. Ct. App. 1997). Here, the evidence clearly shows that any penetration involved a touching of the victim's genitalia. The victim testified that on three occasions the defendant had put his hand under her clothes, rubbed her genitalia with his hand, and digitally penetrated her genitalia. The penetration was not a separate act from the touching; rather, under the facts of this case, it formed a material part of the course of touching. The evidence of penetration, therefore, is not evidence of "other crimes, wrongs, or acts," and Rule 404(b) does not apply.

Rule 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Evidence that the defendant penetrated the victim with his fingers is proba-tive of whether he intentionally touched her "under circumstances

that can reasonably be construed as being for the purpose of sexual arousal or gratification." RSA 632-A:2, II. The trial court did not abuse its discretion in admitting it. *See State v. Castine*, 141 N.H. 300, 304-05, 681 A.2d 653, 657 (1996).

## IV. Cross-Examination of State Witness

During trial, the State called a police officer who had conducted an interview with the defendant. The officer testified to the defendant's statements concerning his residences between 1993 and 1996. As defense counsel commenced his cross-examination, the State obtained a ruling barring the defense from eliciting testimony that during his interview with the officer, the defendant denied assaulting the victim.

The defendant argues that he was entitled to cross-examine the officer about his assertion of innocence under the completeness doctrine. The State contends that because the officer testified solely regarding the defendant's various residences during the period charged in the indictments, assertions of innocence are irrelevant and the completeness doctrine does not apply.

Although the defendant relies in part upon New Hampshire Rule of Evidence 106, Rule 106 expressly applies to writings and recorded statements. *See* N.H. R. EV. 106. Rule 106 is a partial codification of the common law doctrine of "completeness," which applies to verbal utterances as well as writings or recorded statements. *See State v. Warren*, 143 N.H. 633, 637, 732 A.2d 1017, 1019-20 (1999). Despite the enactment of Rule 106, the common law doctrine survives and applies to conversations. *Id.* Under this doctrine "a party has the right to introduce the remainder of the writing, statement, correspondence, former testimony, or conversation so far as it relates to the same subject matter and hence tends to explain or shed light on the meaning of the part already received." *State v. Crosman*, 125 N.H. 527, 531, 484 A.2d 1095, 1098 (1984) (quotation omitted).

■ The defendant argues that omitting his denial of guilt might have left a "misleading impression for the jury . . . that he might actually have confessed." The record, however, reveals no basis for his argument, and the defendant offers none. The officer's testimony was strictly limited to his identity and position, the defendant's three addresses, and the time the defendant lived at each location. The defendant's denial of wrongdoing is unrelated to information he provided as to his residences, and we cannot see how it would "shed light" on the latter or reasonably give rise to an inference that he

admitted guilt. Thus, the verbal completeness doctrine did not compel admission of the defendant's statements of innocence.

## V. Supplemental Jury Instructions

After deliberations had begun, the jury submitted a question to the court: "Can we have all the elements to convict or aquit [*sic*] (example/location/motive)[?]" The trial court responded with a written instruction beginning, "The State must prove beyond a reasonable doubt the following elements," and thereafter enumerating the material elements of the charged offenses.

The defendant first contends the trial court should have repeated the *Wentworth* charge given at the conclusion of trial. *See State v. Wentworth*, 118 N.H. 832, 838-39, 395 A.2d 858, 862-63 (1978). In *Wentworth*, we presented a model jury charge explaining the reasonable doubt standard. *See id.*

 "A claim that the trial court erroneously instructed or refused to instruct the jury, or refused to answer a jury question in language requested by the defendant, must be evaluated in the context of the entire charge and all of the evidence." *State v. Dedrick*, 135 N.H. 502, 505, 607 A.2d 127, 129 (1992). The trial court need not use the specific language requested by the defendant and has discretion to decide whether a particular charge will assist the jury in reaching a verdict. *Id.* The defendant bears the burden to show that he has been prejudiced by the charge as given. *See State v. Letendre*, 133 N.H. 555, 557, 579 A.2d 1223, 1224 (1990).

 In this case, the trial court gave an unambiguous and legally correct response to the jury's question. *Cf. State v. Bundy*, 130 N.H. 382, 384, 539 A.2d 713, 714 (1988). By enumerating the material elements that must be proven beyond a reasonable doubt, the court explained the requirements for a conviction. Conversely, if the jury did not find all of the requirements, then clearly it was obligated to deliver an acquittal. The defendant's reliance on *Dedrick* is mistaken. In *Dedrick*, we held that if a jury's question is susceptible of several interpretations, the trial court may further attempt to ascertain its meaning or refer the jury to the complete instructions previously given. *Dedrick*, 135 N.H. at 505, 607 A.2d at 129. Here, neither the trial court nor the parties disputed the meaning of the jury's question; rather, the defendant disputed the proper response. Having included the *Wentworth* charge in its final instructions prior to deliberation, the trial court was not required to repeat it in the supplemental instruction and we find no error in its refusal to do so.

The defendant further contends that in light of testimony that the defendant had touched the victim over her clothing, the trial court erred in failing to instruct the jury that the only touching prohibited under RSA 632-A:2, II is direct skin-to-skin touching.

RSA 632-A:2, II provides:

> A person is guilty of aggravated felonious sexual assault without penetration when he intentionally touches the genitalia of a person under the age of 13 under circumstances that can be reasonably construed as being for the purpose of sexual arousal or gratification.

This court is the final arbiter of legislative intent as expressed in the words of a statute considered as a whole. *State v. Arris*, 139 N.H. 469, 471, 656 A.2d 828, 829 (1995). We construe statutory language according to its common usage. *State v. Hart*, 130 N.H. 325, 326, 540 A.2d 859, 859 (1988). "When the language of a statute is plain and unambiguous, we need not look beyond the statute itself for further indications of legislative intent." *Id.* (quotations omitted).

"Touch" means "to perceive or experience through the tactile sense." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2415 (unabridged ed. 1961). Under its plain meaning, "touch" is not limited to skin-to-skin contact; one can touch genitalia through clothing. This interpretation is supported by examination of the statute as a whole. RSA 632-A:1, IV (1996) defines "sexual contact" as "intentional touching of the victim's . . . sexual or intimate parts, including breasts and buttocks, and the intentional touching of the victim's . . . clothing covering the immediate area of the victim's . . . sexual or intimate parts." Sexual contact with a person under the age of 13 constitutes felonious sexual assault. RSA 632-A:3, III (1996). RSA 632-A:2, II prohibits the intentional touching of genitalia only. In essence, it is a category of the sexual contact prohibited by RSA 632-A:3, III, elevated to an aggravated felonious offense. The question is whether RSA 632-A:2, II includes touching of genitalia over clothes. In other words, how narrowly did the legislature intend to define this category of sexual contact for the purposes of RSA 632-A:2, II.

To aid in our determination, we turn to RSA 632-A:2, I (1996 & Supp. 1998), governing aggravated felonious sexual assault by penetration, which can be accomplished either by direct bodily contact or contact with an object. *See* RSA 632-A:1, V (1996). Nothing in the plain language of RSA 632-A:2, II, governing sexual assaults without penetration, indicates that it is more restrictive

than RSA 632-A:2, I. To so construe the statute would permit offenders who otherwise fall within RSA 632-A:2, II to escape prosecution merely because some intermediary material, such as underwear, covered the victim's genitalia. We decline to construe the provision so as to produce such an "unjust and seemingly illogical result," *State v. Farrow,* 140 N.H. 473, 476, 667 A.2d 1029, 1032 (1995) (quotation omitted), and thus conclude that RSA 632-A:2, II is not limited to skin-to-skin touching.

The defendant's remaining arguments raised in his notice of appeal were not briefed and are deemed waived. *See State v. Monroe,* 142 N.H. 857, 873-74, 711 A.2d 878, 889 (1998), *cert. denied,* 119 S. Ct. 807 (1999).

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.